554 P.2d 908
**Harry L. MUSE, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Greyhound Lines West, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA-IC 1423.**

Court of Appeals of Arizona,
Division 1,
Department C.

July 6, 1976.

Rehearing Denied Aug. 31, 1976.

Petition for Review Denied Oct. 5, 1976.

———◆———

Lawrence Ollason, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Ariz.

Robert K. Park, Chief Counsel, by Peter C. Kilgard, Deputy Counsel, Phoenix, for respondent State Compensation Fund.

## OPINION

FROEB, Judge.

The issue in this review of an award of the Industrial Commission denying compensation is whether a mental disability, which is the cumulative effect of employment stresses, is a compensable injury under the Workmen's Compensation Act.

In petitioner's claim for benefits he stated that he sustained a compensable injury on February 26, 1974. On that date, petitioner, who had been a bus driver for defendant Greyhound Lines West for 31 years, had a brief blackout during a stop on a "run" from Phoenix to Los Angeles. Petitioner did not at that time report the incident to anyone, but completed his run. The day after his return to Phoenix, petitioner went to J. E. Cook, M.D., the company physician. Dr. Cook examined petitioner and ordered him not to return to bus driving. Thereafter, a series of tests were performed by numerous physicians and the consensus was reached that petitioner should not return to bus driving.

Petitioner filed a claim for workmen's compensation benefits. The insurance carrier denied his claim, and a hearing was ultimately held to determine whether benefits were due petitioner. Two psychiatrists, Maier I. Tuchler and Richard H. Duisberg, and petitioner testified at the hearing. There were also several medical reports before the Commission for consideration by the hearing officer.

The hearing officer summarized the testimony of Dr. Tuchler in Finding No. 4 of his Decision Upon Hearing.

. . . it was Dr. Tuchler's opinion that the applicant was suffering from "depressive neurosis and psychophysiological reaction derived of work associated stress and strain"; Dr. Tuchler testified that a review of the applicant's past history did not reveal any significant family problems which would cause the symptoms of which he was complaining; that it was Dr. Tuchler's opinion that the applicant's job had caused tension and stress derived from the responsibilities of driving and that he should not presently drive a bus.

Dr. Tuchler concluded that the blackout and the spells of dizziness, and possibly the other physical symptoms which petitioner displayed, were a psychophysiological reaction to the mental stresses which he felt.

When Dr. Duisberg was asked his opinion as to whether petitioner's condition was related to his employment, he testified:

Oh, yes, there is certainly a relationship, but I think that no matter what employment one would have, there would be a relationship. This job became more difficult for him because he felt, by virtue of his basic makeup and somewhat neurotic perfectionism, that he had to do a good job and he couldn't afford to have that emotionality which was disturbing him. The cause of the emotionality was not because he had to drive a bus. The cause of it was because there were emotional things that were bugging him, bothering him in his life situation and in many areas, I think. The driving was one of them, but not a major factor.

Petitioner testified that prior to February 26, 1974, he had never experienced a "complete blackout." However, he said that for the past four or five years he had been experiencing what he described as "extremely dizzy spells" which required him to "sit down or throw my head down or something." He stated that he felt these spells were associated with the pressures of his job. Petitioner also testified that in addition to dizziness, he experienced numbness on his entire left side as well as a "knot" in his stomach when he was on the job.

The hearing officer, in his Decision Upon Review, concluded that, although there was no medical conflict in the evidence that petitioner's employment was at least a factor in bringing about his disability for bus driving, petitioner nonetheless was not entitled to recovery under the Workmen's Compensation Act as it has

**314**

been interpreted by this court in *Ayer v. Industrial Commission,* 23 Ariz.App. 163, 531 P.2d 208 (1975) and *Shope v. Industrial Commission,* 17 Ariz.App. 23, 495 P.2d 148 (1972). We agree that these cases support the hearing officer's decision and are dispositive of the issue before us.

A disabling mental condition brought about by the gradual buildup of emotional stress over a period of time and not by an injury-causing event is not compensable.

In *Ayer,* supra, the disability of claimant, a switchboard operator, was the result of a combination of factors, including her makeup, emotional condition and reaction to the pressures of her job which she had performed for 27 years. Here, as in *Ayer,* there is an absence of an unexpected injury-causing event to which petitioner's mental condition can be attributed. Petitioner points to the blacking-out incident of February 26, 1974, as such an event. That incident, however, was not an injury-causing event, but rather a symptom of the emotional buildup which had been gaining momentum over the previous four to five years.

In *Shope,* supra, the claimant became so upset during an argument with a customer that he left work and was fired. His condition was later diagnosed by a psychiatrist as an anxiety reaction precipitated by the job situation. In denying compensation, the court distinguished *Brock v. Industrial Commission,* 15 Ariz.App. 95, 486 P.2d 207 (1971), in which compensation had been awarded to a person whose preexisting depressive anxiety had been aggravated as a result of his suspension from work following an incident in which the truck he had been driving ran over and killed a woman. The court stated:

> We believe this to be the distinguishing feature between *Brock* and the case *sub judice.* The evidence here reveals no unexpected injury-causing event but rather a buildup of emotional stress for a period of years preceding the day that petitioner walked off the job. The conflicts which petitioner experienced were

part of the usual, ordinary and expected incidents of his employment. [17 Ariz. App. at 24–25, 495 P.2d at 149.]

Likewise petitioner, in this case, was subjected to nothing other than the usual, ordinary and expected incidents of his job as a bus driver. No particular event precipitated his mental condition, which had developed gradually over a number of years.

The hearing officer properly applied Arizona law to the facts of the case. The award is affirmed.

EUBANK, P. J., and HAIRE, Chief Judge, Division 1, concur.