579 P.2d 555

**FIREMAN'S FUND INSURANCE CO., and Drenberg & Associates, Inc., Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Janice W. Craig, Respondent Employee.**

**No. 13319–PR.**

Supreme Court of Arizona, In Banc.

April 25, 1978.

Rehearing Denied May 31, 1978.

**52**

Moore & Romley by Craig R. Kepner, Cathey Dee Milan, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent The Industrial Commission of Arizona.

Chris T. Johnson, P. C., Phoenix, for respondent Craig.

State Compensation Fund by Robert K. Park, Chief Counsel, Phoenix, for amicus curiae.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by J. Victor Stoffa, Phoenix, for amicus curiae Ins. Co. of North America.

STRUCKMEYER, Vice Chief Justice.

This case involves the compensability of a disabling mental condition under Arizona's Workmen's Compensation Law. We granted review to settle the question of whether a disability brought on by strain and worry may be compensated as an injury by accident. Opinion of the Court of Appeals vacated. The award of the Industrial Commission affirmed.

Janice W. Craig, respondent employee, was employed by Drenberg and Associates, an insurance agency. She had approximately 15 years' experience when she started to work at the Drenberg Agency in August of 1974. She was initially assigned underwriting duties in the personal and commercial line of insurance. About the time respondent started to work, Drenberg began a year of explosive growth. Under normal conditions, an agency with 400,000 accounts could expect to acquire approximately 40,000 new accounts in the period of a year. Drenberg grew from 400,000 to 1,200,000 in just over one year. To keep pace with this growth, the agency's employees worked many extra hours, five and one-half day weeks. Yet, in spite of their best efforts, the agency remained thirty days behind in its accounts.

Respondent was a conscientious employee and a perfectionist. In addition to her duties in the area of the personal and commercial line of insurance, she took over a part of what is described as the commercial desk handling correspondence and renewals and changes. Her working conditions created an atmosphere in which respondent was under constant pressure.

On or about April 1, 1975, Drenberg purchased an agency from Earl Woodland, thereby acquiring 500 new accounts and an additional employee. Respondent was given supervisory responsibility for the new employee and the responsibility for merging the books of the two agencies. The additional responsibility and the mounting pressure began to affect respondent. She began to feel frustrated and ineffective. She

experienced difficulty relating to her co-workers and on occasions had heated exchanges with customers. On September 25, 1975, respondent engaged in a particularly emotional telephone conversation with one of the agency's customers, after which she eventually left the office in tears. That night she took a slight overdose of sleeping pills. The following day she sought help at the Tri-City Mental Hospital and was subsequently admitted to Camelback Hospital, where her condition was diagnosed as neurotic depression, or a mental breakdown.

Respondent filed a claim with the Industrial Commission wherein she related facts which established that she was suffering from a disabling mental condition brought on by the gradual buildup of the stress and strain of her employment. The Industrial Commission found in part:

"12. The applicant's injury was accumulating from April 1975 when her employment began to provide a reason or event for anxieties, fears and apprehensions resulting in an industrial injury on September 25, 1975. *Fireman's Fund Indemnity Co. v. Industrial Acc. Comm.*, Dist. Ct. of Appeals, 1st Dist., Calif. [App.], 241 P.2d 299 (1952).

13. The testimony at the hearing as well as the evidence in the file lead to the inevitable conclusion that the applicant sustained personal injury arising out of and in the course of her employment within the meaning and definition of the Workmen's Compensation Act. *Thiel v. Industrial Commission*, supra."

Respondent was awarded medical, hospital, and surgical expenses, in addition to compensation for temporary total and temporary partial disability. The only issue to be decided is whether a disabling injury which results from the gradual buildup of stress and tension is compensable as an injury by accident pursuant to A.R.S. § 23–901, et seq.

Petitioner urges that there must be an unexpected injury-causing event accompanied by physical impact or exertion before there is an accident with the meaning of § 23–1021(B).

Section 23–1021(B) provides in part:

"Every employee covered by insurance in the state compensation fund who is injured by accident * * * shall receive such medical, nurse and hospital services and medicines, * * * as provided in this chapter."

Petitioner asserts two separate and distinct propositions; first, that the injury-causing event must be unexpected, and, second, that it must be traceable to exertion or physical impact. As to the first, it is to be acknowledged that generally it is held the cause of injury must be unexpected in order to qualify as an accident. However, in *Paulley v. Industrial Commission*, 91 Ariz. 266, 272, 371 P.2d 888, 893 (1962), we modified the strictness of this rule, saying:

"* * * Arizona follows the English and now majority American view that an injury is caused 'by accident' when either the external cause or the resulting injury itself is unexpected or accidental."

Hence, by definition, an injury is caused by accident when the resulting injury is unexpected. While respondent's office duties were routine, the result of the delegation to her of excessive responsibilities resulted in the unexpected, her mental breakdown. We think that the respondent's disability was sufficiently unanticipated to be called "unexpected" and, hence, accidental within the meaning of § 23–1021(B).

In support of petitioners' second position, that a traceable exertion or physical impact must exist, petitioner cites these cases: *Shope v. Industrial Commission*, 17 Ariz. App. 23, 495 P.2d 148 (1972); *Ayer v. Industrial Commission*, 23 Ariz.App. 163, 531 P.2d 208 (1975); *Muse v. Industrial Commission*, 27 Ariz.App. 312, 554 P.2d 908 (1976); *Verdugo v. Industrial Commission*, 114 Ariz. 477, 561 P.2d 1249 (1977). We think, however, that a discussion of *Shope*, supra, will be dispositive of these cases and consequently we will specifically deal with it.

Shope was an automobile repairshop foreman who suffered an excessive psychoneu-

rotic anxiety reaction. His condition was precipitated by the stress of an argument with a customer over his bill. The Industrial Commission denied Shope's claim because his condition resulted from purely excessive emotions. On appeal, the issue presented to the court was:

"Is an Excessive Psychoneurotic Anxiety Reaction, Unaccompanied by Physical Force or Exertion, a Compensable Claim Within the Meaning of the Workmen's Compensation Act?" 17 Ariz.App. at 24, 495 P.2d at 149.

The appeals court held that an excessive psychoneurotic anxiety reaction unaccompanied by physical force or exertion was not compensable where there is no evidence of an unexpected injury-causing event. The decision was reached without the benefit of prior Arizona case law and no authority was cited in support of the holding. *Brock v. Industrial Commission,* 15 Ariz.App. 95, 486 P.2d 207 (1971), was distinguished.

In *Brock,* petitioner's preexisting mental condition was aggravated after being informed by a policeman that he had, unwittingly, run over and killed a pedestrian while driving a City of Tempe water truck. The subsequent police investigation and Brock's failure to clear himself further aggravated his condition to the extent that it interfered with his ability to work and he was consequently discharged. The Court of Appeals addressed the issue of whether:

" * * * purely excessive emotions, *unaccompanied by physical force or exertion,* can be the basis of an accident within the purview of the Workmen's Compensation Law, * * *." *Id.* at 96, 486 P.2d at 208.

saying:

"[O]ur research has taken us to several cases, generally in the context of heart conditions, which refer to the presence of a non-physical stress producing situation as a contributing factor to the condition under discussion, there was also present in each of these cases a physical force or exertion not here present. * * * However, our examination of these cases convinces us that the presence of a physical force or exertion was not a necessary element to the determination that the claimant had been 'injured by accident' but rather provided in these cases an easily discernible event as a basis for determining whether the injury there involved was one 'arising out of and in the course of employment'." *Id.*

■ We think *Brock* represents the correct view. Physical impact or exertion is not a necessary element in determining whether an injury has, in fact, occurred. *Thiel v. Industrial Commission,* 1 Ariz.App. 445, 404 P.2d 711 (1965). *See Baker v. Workmen's Compensation Appeals Board,* 18 Cal.App.3d 852, 96 Cal.Rptr. 279 (1971), and 70 Yale L.J. 1129.

Larson said in discussing *Carter v. General Motors Corporation,* 361 Mich. 577, 106 N.W.2d 105 (1960):

"There are, in addition, several decisions confirming the compensability of a disabling nervous condition brought on gradually by strain and worry. A cleancut illustration is the Michigan holding in *Carter v. General Motors Corporation.* Here we have the modern industrial tragedy, not at the executive level, but at the level of the assembly line, with a set of facts recalling Charlie Chaplin's losing battle with this inhuman antagonist in *Modern Times.* The claimant, who had considerable emotional trouble in his background to start with, simply could not keep up with the assembly line, as a result of which he found himself constantly berated by his foreman. This in turn filled him with dread of losing his job, and the final result was a disabling psychosis. The Supreme Court of Michigan upheld an award." Larson, Workmen's Compensation, Vol. 1A, § 42-23.

■ We think that *Carter* is more nearly analogous to *Shope v. Industrial Commission,* supra, and that it is unnecessary to go as far as did the Michigan court. We do not have here a claimant who was unable to keep up with other workers. Rather, there is here a claimant upon whom more and more work and responsibility was constantly being placed by her employer so that

eventually the work and responsibility became more than she could tolerate. At this point, the unanticipated occurred and claimant suffered a mental breakdown. We think under these circumstances, as the Industrial Commission found, that claimant sustained personal injury arising out of and in the course of her employment within the meaning of the Workmen's Compensation Act.

Award affirmed.

GORDON, Justice (dissenting):

In addition to Mrs. Craig's difficulties at the office, the testimony at the hearing presented a picture of domestic disharmony. Respondent and her husband argued frequently, often concerning his drinking habits. She encountered difficulties in relating to her daughters, and her mother's death caused additional internal pressures. On the evening of September 25, 1975, the Craigs again argued, following which she took the overdose of medication. The psychiatrist who first evaluated Mrs. Craig upon her admission to Camelback Hospital testified, in part:

"Q. And there was no sudden unexpected or sudden injury-causing event on September 25th that you put your finger on, was there?

"A. I think the stresses were building up from work over a period of time, from the history I got. It was my feeling that the hospitalization was brought on by the fight that occurred with her husband the night before".

Although the Workmen's Compensation Act should be liberally construed to meet its intended purpose, we must not lose sight of the fact that the Act was not intended to be a general health and accident insurance substitute. *See, e. g., Cavness v. Industrial Commission*, 74 Ariz. 27, 243 P.2d 459 (1952). Without question, the majority announces a logical extension of the workmen's compensation case law represented by *Paulley v. Industrial Commission*, 91 Ariz. 266, 371 P.2d 888 (1962), and *Brock v. Industrial Commission*, 15 Ariz.App. 95, 486 P.2d 207 (1971). However, I believe this is a step which should be taken by the Legis-

lature, rather than by further judicial modification of the terms "injured by accident arising out of and in the course of employment". A.R.S. § 23–1021(B).

Today's approval of the award for a mental condition brought about by the gradual build-up of emotional stress over a period of time, without an injury causing event, paves the way for tomorrow's abuses of the workmen's compensation system. In my opinion, the potential for mischief in this area is too great to abandon the concrete standard established by *Shope v. Industrial Commission*, 17 Ariz.App. 23, 495 P.2d 148 (1972) and followed in *Verdugo v. Industrial Commission*, 114 Ariz. 477, 561 P.2d 1249 (App.1977); and *Muse v. Industrial Commission*, 27 Ariz.App. 312, 554 P.2d 908 (1976). Therefore, I would draw the line for compensation of mental "injuries" at *Brock v. Industrial Commission*, 15 Ariz. App. 95, 486 P.2d 207 (1971). *Brock* indeed represents the correct view that physical exertion or impact is not necessary, so long as there is a work-connected, unexpected, injury causing event. Absent this crucial element, I do not believe that this type of claim satisfies the language of A.R.S. § 23–1021(B).

I respectfully dissent.

HAYS, Justice (concurring):

I concur in the dissent.