918 P.2d 1051

## NORTHERN INSURANCE COMPANY OF NEW YORK, a New York corporation, Plaintiff–Appellee,

v.

Clarence T. MORGAN and Barbara Morgan, husband and wife; Arizona Tufflite, Inc., an Arizona corporation, Defendants–Appellants.

## NORTHWESTERN NATIONAL CASUALTY COMPANY, a foreign corporation, Plaintiff–Appellee,

v.

C.T. MORGAN dba C.T. Morgan Cement Company, Inc.; Arizona Tufflite, Inc., an Arizona corporation; C.T. Morgan dba C.T. Morgan Enterprises; C.T. Morgan dba Clay Transport, Inc.; C.T. Morgan dba Bedrock; C.T. Morgan Cement Construction, Inc., an Arizona corporation; Leslie Ballard, a single woman, Clarence T. Morgan and Barbara Morgan, husband and wife, Defendants–Appellants.

Nos. 1 CA–CV 92–0220, 1 CA–CV 92–0553.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 26, 1995.

Reconsideration Denied Jan. 4, 1996.

Review Denied June 19, 1996.*

Jennings, Strouss & Salmon, P.L.C. by W. Michael Flood, James M. Ackerman, Stephen E. Crofton, J. Matthew Powell, Phoenix, for Plaintiff–Appellee, Northern Insurance Company.

---

* Jones, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Garrey & Curran, P.C. by D. Reid Garrey, Shawna M. Woner, Scottsdale, for Plaintiff–Appellee, Northwestern National Casualty.

Roush, McCracken & Guerrero by Charles D. Roush, Phoenix, for Defendants–Appellants.

## OPINION

GRANT, Judge.

In Case No. CA–CV 92–0220, Clarence and Barbara Morgan and Arizona Tufflite, Inc. appeal from summary judgment granted in favor of Northern Insurance Company, ("Northern"). In Case No. CA–CV 92–0553, C.T. Morgan, et al. appeal from summary judgment granted in favor of Northwestern National Casualty Company, ("Northwestern"). Both actions were declaratory judgment actions.

## FACTS AND PROCEDURAL HISTORY

On February 23, 1990, Leslie Ballard ("Ballard"), filed suit against Clarence T. Morgan ("Morgan"), his wife, and Arizona Tufflite, Inc. ("Tufflite") ("Appellants"), alleging sexual misconduct by Morgan, in Maricopa County Superior Court Cause No. CV 90–05345 ("underlying case"). Morgan is president and chief executive officer of Tufflite and Ballard was employed by Tufflite as a sales representative. In her deposition, Ballard claimed that Morgan had sexually harassed and assaulted her on numerous occasions at the office and on business trips while she was employed by Tufflite. Morgan admitted to having sexual relations with Ballard, but claimed that Ballard consented to and sometimes initiated the sexual conduct.

On May 12, 1990, Ballard filed her first amended complaint, which claimed: assault and battery; intentional and negligent infliction of emotional distress; invasion of privacy; breach of contract; sexual discrimination—harassment; and tortious wrongful discharge. Appellants reported Ballard's claim and tendered defense to Northern and Northwestern. Appellants asserted that they were entitled to coverage under a commercial liability and umbrella policy issued by Northern and a general commercial liability policy issued by Northwestern.

Northern declined to defend or provide coverage to Appellants for Ballard's claim. Northwestern agreed to defend Appellants, but reserved the right to decline coverage. Northern and Northwestern ("Appellees") sought judgments in the trial court against Appellants and Ballard declaring that the intentional act exclusions precluded policy coverage for injuries resulting from Morgan's alleged sexual misconduct with Ballard. Appellants counterclaimed, claiming breach of contract and bad faith. Ballard subsequently filed a second amended complaint in the underlying case on October 15, 1992, alleging assault and battery, invasion of privacy, and negligence.

On January 30, 1992, the trial court in CV 91–19971 ("Northern case"), granted Northern's summary judgment motion and denied Appellants' cross-motion for summary judgment on the ground that the intentional act exclusions precluded coverage and a duty to defend. Northwestern withdrew its defense in the underlying case on March 23, 1992, approximately one month before trial was scheduled. On June 1, 1992, the trial court, in CV 91–10009 ("Northwestern case"), granted Northwestern's motion for summary judgment and denied Appellants' cross-motion for summary judgment on the same grounds, adding "[l]abeling the acts negligence does not change the nature of the claim of duty." Appellants filed timely notices of appeal from the judgments entered in favor of Northern and Northwestern. Both appeals were consolidated for our review.

During the pendency of this appeal, judgment was entered against Appellants in the underlying case in the amount of $2.5 million. Appellants have assigned their claims against Appellees to Ballard as partial satisfaction of that judgment. Thereafter, Ballard's counsel has substituted as counsel for Appellants.

## ISSUE

As a matter of law, are the alleged acts of sexual misconduct intentional and therefore precluded from policy coverage under the policy intentional acts exclusion?

## DISCUSSION

Because in both cases summary judgment was granted in favor of the appellees, this court must review the facts in the light most favorable to the appellants. *Phoenix Control Systems v. Insurance Co. of North America,* 165 Ariz. 31, 796 P.2d 463 (1990).

This court has previously held that, under common law principles, "an employee's sexual harassment of another employee is not within the scope of employment." *Smith v. American Express Travel Related Servs. Co.,* 179 Ariz. 131, 136, 876 P.2d 1166, 1171 (App. 1994). In *State v. Schallock,* 185 Ariz. 214, 914 P.2d 1306 (App.1995), we recently added:

> To hold that sexual harassment is not within the course and scope of employment does not foreclose direct recourse against an employer for a supervisor's harassive acts. Victims of sexual harassment may establish the independent liability of employers whose negligent or reckless practices or policies permit sexual harassment in the workplace. *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580 (1987).

This case, unlike *Smith* and *Schallock,* does not concern the question whether the acts of a sexual harasser fell within the course and scope of his employment. It concerns whether the alleged acts of harassment were necessarily intentional or could be reasonably found to have been negligent.

■ If the facts of a complaint would trigger coverage but additional facts not appearing in the complaint would exclude coverage then there is no duty to defend. *Kepner v. Western Fire Ins.,* 109 Ariz. 329, 331, 509 P.2d 222, 224 (1973). This court has further defined the standard by creating a duty to investigate on the part of the liability insurer. *United States Fidelity & Guaranty Corp. v. Advance Roofing Supply Co.,* 163 Ariz. 476, 480, 788 P.2d 1227, 1231 (App. 1989). The duty to defend stems from the facts, not the allegations of the complaint. The insurer may conduct a reasonable investigation and refuse to defend based upon the actual rather than alleged facts. *Id.*

Here, Northern refused to defend Morgan against allegations of sexual harassment from the outset of this litigation. Northwestern initially provided a defense but withdrew it later in the litigation.

■ Under the holding of *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969), if the insurer refuses to defend, the insured is generally free from the obligations of the cooperation clause of the insurance contract and can enter settlement agreements. *See United Services Automobile Assoc. v. Morris,* 154 Ariz. 113, 121, 741 P.2d 246, 254 (1987), citing *Damron; cf. Arizona Property & Casualty Ins. Guaranty Fund v. Helme,* 153 Ariz. 129, 735 P.2d 451 (1987) (holding that insureds did not breach their duty of cooperation merely by entering a *Damron* agreement). Therefore, if it were determined that there was a duty to defend Morgan in the underlying suit, Northern and Northwestern could not object to Morgan entering into a settlement agreement. Likewise when an insurer erroneously denies coverage and refuses to defend, regardless of the "good faith" of the insurance company, it is liable on any judgment subsequently entered. *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969).

■ However, the paramount issue in this case is not whether Morgan had a duty to cooperate but whether the negligence claim made by Ballard, the plaintiff in the underlying case, gives rise to a duty to defend and possibly indemnify.

If "negligent" sexual harassment does not, as a matter of law, exist, then these actions would fall outside policy coverage and fail to trigger the duty to defend.

Our focus therefore is on the intent required for sexual harassment and whether one person can negligently sexually harass another. Sexual harassment falls into two categories according to the Equal Employment Opportunity Commission ("EEOC"): *quid pro quo* and creating a hostile environment. The EEOC has also deemed sexual harassment a form of sex discrimination prohibited by Title VII.

Other jurisdictions have held that sexual harassment is intentional as a matter of law. *See Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.,* 786 F.Supp. 629,

632 (N.D.Texas 1992) (holding allegations inseverable and, thus, finding no basis for duty to defend negligence claim absent consideration of the alleged acts of sexual harassment). *See also Sena v. Travelers Ins. Co.,* 801 F.Supp. 471 (N.M.1992) (holding that, despite claims of negligent touching and negligent infliction of emotional distress, sexual overtures alleged were intentional); *Commercial Union Ins. Cos. v. Sky, Inc.,* 810 F.Supp. 249, 254 (W.D.Ark.1992) (granting Commercial's motion for summary judgment and finding no duty to defend Sky, Inc., because of its finding that the alleged conduct was "deliberate and intentional"). *Cf. State Farm Fire & Casualty Co. v. Compupay,* 654 So.2d 944 (Fla.App. 3 Dist.1995) (holding that "acts of sexual harassment and discrimination, which are directed towards the injured person, are intentional acts"). In *Compupay,* the court found no policy coverage.

The most widely cited opinion on the subject of intent in Arizona is *Continental Insurance Co. v. McDaniel,* 160 Ariz. 183, 772 P.2d 6 (App.1988). In *McDaniel,* the court held that an insured's wrongful intentional acts were not covered under a policy which defined an "occurrence" as an accident. The acts at issue were instances of sexual harassment. In reaching its decision, the *McDaniel* court distinguished *Transamerica Insurance Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984), which considered the subjective viewpoint of the insured regarding whether the injury, not the act, was intended (in self-defense situations). The *Meere* court held that there was some justification or privilege connected with the insured's intentional act of self-defense. *Id.* at 355, 694 P.2d at 185.

The *McDaniel* case is persuasive because of its similarities, in allegations and defenses, to the instant case and because of the supreme court's later inference of intent from the decision. The plaintiffs in *McDaniel* and *Northern* alleged similar instances of unwelcome sexual harassment, i.e., vulgar language, phone calls at home, grabbing and fondling. The defendants both offered consent, and their mistake as to it, as a defense. Policy coverage pleases both parties in these cases because the defendant avoids paying for personal liability and the plaintiff will not have to be concerned about the possibility that the defendant will not be able to pay the judgment.

The supreme court cited *McDaniel,* in stating that courts may view the nature and circumstances of the insured's intentional acts in determining whether harm was substantially certain to result and that thus, intent may be inferred as a matter of law. *Phoenix Control Systems, Inc. v. Ins. Co. of North America,* 165 Ariz. 31, 36, 796 P.2d 463, 468 (1990). The supreme court distinguished *Meere* by stating that "subjective intent is usually examined where escape from harm, not harm to another is the aim." *Id.*

Ballard was employed by Tufflite as a sales representative and as such was under the authority and sole supervision of Morgan. The conduct giving rise to Ballard's complaint occurred on numerous occasions. Ballard alleged that Morgan made sexually oriented advances toward her verbally and physically; had sexually oriented physical contact with her; sexually assaulted her; verbally assaulted her; invaded her privacy; and caused physical and emotional injury to her through a continued course and pattern of conduct which Morgan should have known would result in both physical and emotional damage to her. Ballard asserted that the bulk of the conduct was against her clearly expressed will and was, therefore, intentional. Morgan admitted that some of the acts occurred, but claimed that Ballard had either consented to them or had, in fact, initiated them. Other allegations he simply denied, said it was "a mutual thing" or that Ballard agreed to the conduct.

We do not believe that the facts of this case support a determination that any reasonable jury could find that Morgan acted negligently. Either the acts happened as Ballard said, in which case the acts were intentional and occurred without her consent, or the acts happened as Morgan said and there is no claim because Ballard consented. *See State Farm v. Ezrin,* 764 F.Supp. 153, 156 n. 2 (N.D.Cal.1991); *Continental Ins. Co. v. McDaniel,* 160 Ariz. 183, 772 P.2d 6 (App. 1988).

The subjective view that Morgan would like the court to adopt has only been applied in self-defense cases such as *Meere* and *Fire Insurance Exchange v. Berray*, 143 Ariz. 361, 363, 694 P.2d 191, 193 (1984) (concluding that an intentional act committed in self-defense should not fall within the intentional acts exclusion). We agree with the trial court's statement:

> [T]he court is unimpressed by the fact that there is a second amended complaint which has added a cause sounding in negligence. This Court could well use the language of the Court in *Linebaugh v. Berdish*, 144 Mich.App. 750, 376 N.W.2d 400 (Mich.App. 1985). "The complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of torsion [sic] conduct under the guise of negligent activity." See also *Twin City Fire Insurance Co. v. Doe*, 163 Ariz. 388, 788 P.2d 121 (App.1989).

In *Phoenix Control Systems v. Insurance Co. of North America*, 165 Ariz. 31, 35, 796 P.2d 463, 467 (1990), the supreme court said:

> A two-prong inquiry is applied in Arizona to determine an insured's intent. First, intent is determined by looking at the insured's subjective desire to cause harm. [Citing *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983) and *Meere* ]. An act, even though intentional, must be committed for the purpose of inflicting injury or harm:
>
> \*     \*     \*     \*     \*     \*
>
> Second, if the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result, intent may be inferred as a matter of law. *See Continental Ins. Co. v. McDaniel*, 160 Ariz. 183, 772 P.2d 6 (App.1988); *Steinmetz v. National American Ins. Co.*, 121 Ariz. 268, 589 P.2d 911 (App.1978); *Clark v. Allstate Ins. Co.*, 22 Ariz.App. 601, 529 P.2d 1195 (1975).
>
> \*     \*     \*     \*     \*     \*
>
> For example, an insured is conclusively presumed to intend injury—when he sexually harasses an employee on the job and inflicts emotional distress. *McDaniel.*

Ballard, herself, admitted in her testimony that she believed all Morgan's conduct was intentional.

For the reasons we have set forth we affirm the trial court's grant of summary judgment to Northern and Northwestern in the two cases consolidated in this appeal. Affirmed.

FIDEL, P.J., and GERBER, J., concur.